IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SULIMAN ALI, | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-14-1851 |
| vs. | : |
| | : (Judge Caldwell) |
| SUPERINTENDENT SCI CAMP HILL, *et al.*, | : |
| Defendants | : |

*M E M O R A N D U M*

I.  *Introduction*

Plaintiff, Suliman Ali, an inmate formerly housed at the State Correctional Institution in Camp Hill, Pennsylvania, initiated this action in September 2014.[1] Named as defendants are the Superintendent of SCI-Camp Hill, the Superintendent of SCI-Huntingdon, and Corrections Officer (CO) McGree.

This matter is before the court on Defendants' motion to dismiss. (Doc. 15.) The motion will be granted based on Plaintiff's failure to properly exhaust administrative remedies. Ali will not be granted leave to file an amended complaint as any amendment would be futile due to Ali's failure to exhaust.

---

[1] At some point Ali was transferred from SCI-Camp Hill to SCI-Huntingdon where he remains.

II.     *Standard of Review*

A motion to dismiss under Fed. R. Civ. P 12(b)(6) authorizes the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Under Fed. R. Civ. P. 12(b)(6), the district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). Formulaic recitations of the elements of a cause of action will not suffice. *See Id.* "[L]abels and conclusions" are not enough, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.

With this standard in mind, the following is the background to this litigation, as Plaintiff alleges it.

III.  *Background*

On April 2, 2014, at approximately 9:30 a.m., while housed at SCI-Camp Hill, Ali was subject to a random cell search. He was asked to step out of his cell while two officers searched it. At the conclusion of the search, Ali was issued a confiscation slip for personal photos, drawings and letters taken from his cell. (Doc. 3, ECF p. 10). The items were taken and held for investigation in connection with an ongoing STG investigation concerning the Nation of Islam.[2]

The confiscating officer, CO McGee, placed the confiscated property on the unit officer's desk and explained how they "related to (gang)." (Doc. 3, ECF p. 3). Another officer, CO Cage, reviewed the contents of the letters and property taken and said "there was no cause to remove [the] items." (*Id.*)

At some point Ali was transferred to SCI-Huntingdon. He filed a grievance at SCI-Camp Hill, Grievance No. 504817. (*Id.*, ECF pp. 8-9). The grievance was denied at initial review. (*Id.*, ECF p. 12). Ali was advised that "[u]pon being transferred, all possible STG pictures and drawings were sent to OSII and then SCI-Huntingdon's Security Office. Please refer to their Security Office on whether you will have your things returned to you." (*Id.*) Upon receiving this response, Ali contacted the security office for the return of his property. (*Id.*, ECF p. 14). Ali was advised that "[t]here were no photos received at SCIH (sic) Security Office." (*Id.*) Ali then appealed grievance 504817 to the Secretary's Office of Inmate Grievance & Appeals. The appeal was denied because Ali

---

[2] "STG" stands for strategic threat group.

had "not yet appealed this issue to the Facility Manager. Final review will not be granted until [he] do[es] so." (*Id.*)

Shortly after receiving this response, Ali filed a grievance at SCI-Huntingdon, Grievance Number 519178. (*Id.*, ECF p. 16). The grievance was rejected because it "involved matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility" and because the "[g]rievance disputes previous grievances, appeal decisions, or staff members who rendered those decisions." (*Id.*)

Upon receiving this rejection, Ali wrote a letter to the Superintendents of SCI-Camp Hill and SCI-Huntingdon. (*Id.*, ECF p. 17). He recited his efforts to resolve the grievance issue. (*Id.*) The Grievance Officer at SCI-Huntingdon suggested that Ali appeal either one of the grievances he filed. (*Id.*) Ali advised the Grievance Office that after five months with "no one [who] seems to care if [he] receive that which was taken from [him] and that all the items where religious and had nothing to do with and (sic) gang or any problems that would upset the peace running of th[e] Prison or Staff," that he would pursue the matter in court. (*Id.*, ECF p. 18). However, he filed a grievance appeal with the Superintendent at SCI-Huntingdon. (*Id.*, ECF p. 19).

Ali claims he suffered mental anguish due to being labeled as a gang member without being given an opportunity to clear his name. (*Id.*) He seeks the return of his property and monetary compensation. (*Id.*)

IV. *Discussion*

Defendants move to dismiss the complaint on the following grounds: (1) failure to state a cognizable constitutional claim; (2) failure to plead a due process claim

-4-

related to the seizure of his property; and (3) failure to exhaust his claims prior to filing this action. (Doc. 16, Br. in Supp. Mot. to Dismiss). Because the court finds the defendants' argument regarding Ali's failure to properly exhaust his administrative remedies dispositive of the motion, it is unnecessary to address the alternative arguments.

      A.    *Exhaustion under the PLRA*

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002). "[T]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007); *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015)(exhaustion of prison administrative remedies is mandatory under the PLRA). Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires resolution of disputed facts. *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013).

There is no "futility" exception to the administrative exhaustion requirement. *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002)(citing *Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000)). The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Failure to substantially comply with procedural requirements of the applicable

prison's grievance system will result in the procedural default of a claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

Dismissal of an inmate's claim is appropriate when the prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action. *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006)(nonprecedential)(citing *Ahmed*, 297 F.3d at 209 & n. 9)("Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court.") Furthermore, the filing of an amended complaint after an unexhausted claim is presented to the court does not cure the infirmity. *See Ahmed*, 297 F.3d at 209 (holding that "[w]hatever the parameters of 'substantial compliance' referred to there, it does not encompass a second-step appeal five months late nor the filing of a suit before administrative exhaustion, however late, has been completed. It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint."). Finally, the PLRA exhaustion requirement does not apply to prisoners who file a timely complaint after release from prison, but does apply to prisoners who file a complaint while in prison and are subsequently released. *Id.*, 297 F.3d at 210.

A prisoner need not exhaust every administrative remedy, only those which are available to him. *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *accord Brown v. Croak*, 312 F.3d 109, 112-113 (3d Cir. 2002). "A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Likewise, "[r]emedies

that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes." *Small*, 728 F.3d at 271 (citing *Brown*, 312 F.3d at 113).

A prisoner is not required to allege that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. (*Id.*) As such, it must be pleaded and proven by the Defendant. *Brown,* 312 F.3d at 111.

      B.      *The Pennsylvania Department of Corrections' Grievance Policy*

The court will take judicial notice of the Pennsylvania Department of Corrections' (DOC) policy statement, DC-ADM 804, captioned "Inmate Grievance System."[3] It consists of a three-step procedure for the resolution of inmate grievances. The procedure requires that inmates resolve any issues concerning the conditions of their confinement by first submitting a grievance for "Initial Review" to the Facility Grievance Coordinator using an official form "within 15 working days after the event upon which the claim is based." If the Grievance Coordinator's decision is unfavorable, the inmate may appeal the decision to the Facility Manager within 10 working days. If that appeal is unsuccessful, the inmate may then appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 working days. After this appeal, the inmate has exhausted his available administrative remedies. *See Spruill,* 372 F.3d at 232; *see also Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2000).

---

[3] DC-ADM 804 is publically available at the DOC's website at www.cor.pa.gov.

C. *Ali's Exhaustion Efforts*

Ali filed two grievances concerning the April 3, 2014, confiscation and failure to return his property, Grievance Numbers 504817 and 5191787. Neither grievance alleges interference with Ali's First Amendment rights, or takes issue with him allegedly being labeled a gang member.[4] (Doc. 3, ECF pp. 8-9, and p. 19). The first grievance, No. 504817, was timely filed on April 4, 2014, while Ali was at SCI-Camp Hill. (Doc. 1, ECF pp. 8-9). It was denied upon initial review. (*Id.*, ECF p. 12). Ali, without appealing the denial of his grievance to the Facility Manager, filed an appeal with the Secretary's Office of Inmate Grievances & Appeals. (*Id.*, ECF p. 15). The appeal was rejected due to this oversight. (*Id.*) Ali was advised to appeal the matter to the Facility Manager and then to return to SOIGA. (*Id.*) Ali never properly appealed this grievance to final review.

Ali's second grievance, No. 519178, also concerns the seizure of his property and was filed at SCI-Huntingdon. (*Id.*, ECF p. 19). The grievance was rejected at initial review because it related to events that occurred at SCI-Camp Hill and not SCI-Huntingdon. (*Id.*, ECF p. 16). Ali did not appeal the rejection of this grievance to final review.

Although Ali invites the court to hold "a hearing on this matter for insolvble (sic) reason that the Defendants Claim [he] did not exhaust the Grievance process at SCI

---

[4] In his Complaint Ali alleges that he suffered "mental anguish" due to being labeled "a gang member" without being given "a hearing to clear [his] name." (Doc. 3, ECF p. 3). In his opposition brief, Ali raises for the first time, claims that his "[f]reedom to exercise his religion and to have Religious Material," were violated. Doc. 18, ECF p. 3. Neither of these claims are presented in either of Ali's grievances.

-8-

Camp Hill," he does not say what information he would provide at such a hearing to show that he exhausted his administrative remedies to final review or that he was prevented from doing so. (Doc. 18, Pl.'s Opp'n Br., ECF p. 2). He does not suggest that the defendants have misstated his exhaustion efforts, or that defendants have somehow interfered with his exhaustion efforts making them therefore "unavailable." While Ali recites the language from the denial of his grievance at initial review, "that this matter is closed and dismissed / (sic) any and all claims for relief and or damages" (sic), he does not argue that he was prohibited from appealing this denial to the Facility Manager.[5] Likewise, Ali does not say why he failed to appeal the SCI-Huntingdon Facility Manager's denial of his grievance appeal to final review.

It is clear that Ali failed to exhaust his administrative remedies before initiating this action. In light of this failure, the Complaint will be dismissed without leave to amend.

An appropriate order follows.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: October 7, 2015

---

[5] In his opposition brief, Ali cites to his Inmate Handbook when setting forth the protocol and rationale for searches of inmates and their cells. (Doc. 18, ECF p. 3). The DOC's Inmate Grievance Policy is also found in the Inmate Handbook. *See* www.cor.pa.gov. Accordingly, the requirements for properly complying with the DOC's grievance system were available to Ali.